UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| KATRINA I. MILLER ) | |
| (Social Security No. XXX-XX-6593), ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 3:11-cv-128-RLY-WGH |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON JUDICIAL REVIEW**

**I. Background**

    Katrina I. Miller seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), which found her not disabled and, therefore, not entitled to Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). 42 U.S.C. §§ 416(i), 423(d); 20 C.F.R. § 404.1520(f). The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

    Miller filed an application for DIB on January 30, 2008, alleging that she became disabled on August 17, 2007. (R. 70-72). The agency denied her application both initially and upon reconsideration. (R. 46-49, 57-59). On March 18, 2010, an Administrative Law Judge ("ALJ") held a hearing, during which Miller, who was represented by counsel, and a vocational expert ("VE") testified. (R. 27-41). On July 1, 2010, the ALJ issued her

opinion finding that Miller was not disabled because she did not have a severe impairment. (R. 16-22). The Appeals Council denied her request for review, leaving the ALJ's decision as the final decision of the Commissioner. (R. 1-3). 20 C.F.R. §§ 404.955(a), 404.981. Miller then filed a Complaint on October 11, 2011, seeking judicial review of the ALJ's decision.

Miller was born on December 25, 1961, and has completed two years of college. (R. 22, 31). Her past work includes jobs as an office cleaner, store manager, and fast food assistant manager. (R. 32).

## II. Legal Standards

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997). This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson*, 402 U.S. at 399-400. Accordingly, this court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner. *See Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).

In order to qualify for disability benefits under the Act, Plaintiff must establish that she suffered from a "disability" as defined by the Act. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations set out a sequential five-step test the ALJ is to perform in order to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The ALJ must consider whether the claimant: (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform his past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy. *Id.* The burden of proof is on Plaintiff during steps one through four, and only after Plaintiff has reached step five does the burden shift to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

### III. The ALJ's Decision

The ALJ's decision included the following findings: (1) Miller met the insured status for DIB through March 31, 2010 (R. 18); (2) Miller had not engaged in substantial gainful activity since the alleged onset date (R. 18); and (3) in accordance with 20 C.F.R. § 404.1520, Miller suffered from two impairments, migraine headaches and depressive disorder, neither of which were severe impairments (R. 18-19). The ALJ concluded by

finding that Miller was not under a disability. (R. 22).

## IV. Issues

Plaintiff's brief essentially raises two issues, which are as follows:

**Whether Plaintiff's migraines should have been found to be severe.**

In this case, at step two of the five-step sequential evaluation process, the ALJ concluded that Miller did not suffer from any severe impairment. An impairment is not severe if it does not significantly limit an individual's ability to do basic work activities. 20 C.F.R. § 404.1521. It is important to remember that it is Miller's burden at step two to prove that she has a severe impairment.

She alleges that there was sufficient evidence to demonstrate that her migraines were a severe impairment and that the ALJ erred by improperly addressing the medical evidence and by improperly discrediting her testimony about her migraines.

The ALJ reasoned that Miller's migraines were not a severe impairment explaining:

On February 24, 2009, Dr. Roderick Warren evaluated the claimant after referral by the claimant's primary care physician (Dr. Luff). Dr. Warren noted negative CT findings and entirely normal neurological findings, and stated equivocally that "patient sounds like she has migraine headaches" which "seems like an accurate diagnosis." Dr. Warren adjusted the claimant's medications (Exhibit 14F). In April 2009, the claimant told Dr. Luff her migraines were under "good control" on Depakote and Frova as prescribed by Dr. Warren (Exhibit 13F/13). However, on May 5, 2009, the claimant told Dr. Warren that her migraines were worse. Dr. Warren recommended increasing her Depakote and indicated the claimant would have "some monitoring labs checked." The claimant was scheduled for a three month follow-up, but did not keep that appointment or the subsequent appointment scheduled December 16, 2009 (Exhibit 14F/1). If, as her primary care physician Dr. Luff later noted, her migraines ceased to be under control after April 2009, the claimant would have been more than eager to

keep her appointments with Dr. Warren to continue treatment.

(R. 20). The ALJ also explained that Miller alleged "she has migraines three to four times a week for the past four to five years" that last "an average of five days," and the ALJ questioned why, with such serious allegations, no medical provider or emergency room visit had documented serious symptoms. (R. 20).

Miller finds fault in the ALJ's decision about the medical evidence because numerous doctors have diagnosed migraines, because she has had numerous hospital visits for the migraines, and because she has been prescribed medications to treat the migraines. Miller also found it significant that no doctor had ever noted the possibility of malingering or drug-seeking. However, the fact that Miller visited the emergency room or was prescribed medications is not, alone, evidence that Miller's migraines were severe. There must be objective medical evidence to support her allegations.

In this instance, the ALJ pointed to the lack of objective evidence of the severity of Miller's migraines. In fact, while Miller visited the hospital numerous times from her alleged onset date until the date of the ALJ's decision, the court finds that the ALJ was correct that Miller was "typically" observed to be comfortable, in no distress, alert, oriented, and ambulatory. Out of Miller's dozens of trips to the emergency room, there are only two or three instances in the record where emergency room notes indicated that she appeared to be uncomfortable or in pain. (R. 253, 279). Otherwise, Miller's physical examinations were routinely unremarkable, and she was frequently observed to be comfortable and in no apparent distress despite her complaints of severe to extreme

headache pain. There was also never any report of vomiting despite Miller's routine allegations of nausea. As indicated by the ALJ, Miller also underwent a CT scan that was normal. (R. 347). Furthermore, Miller's treating physician, Dr. Luff, had found that her migraines were well controlled with medication on April 15, 2009. (R. 489-90). While Miller later reported to her neurologist, Dr. Warren, that the migraines were not controlled, she also explained to Dr. Warren that her migraine medication Frova was "very helpful" (R. 507), and after Dr. Warren altered Miller's prescription for Depakote, she never returned to Dr. Warren and was a "no show" on two occasions over the next eight months. (R. 508). Based on the record, the court concludes that the ALJ's decision finding that Miller's migraines were not a severe impairment is supported by substantial evidence.

Miller also alleges that the ALJ had improperly mischaracterized her testimony at the hearing. The ALJ noted in the decision that "[a]t the hearing the claimant testified that she currently had a migraine. She seemed not at all debilitated by the migraine, however." (R. 21). Miller argues that this was an inaccurate assessment of her testimony because she had only indicated that she had the *beginnings* of a migraine, but had not stated that this was a typical migraine or that it was already causing her typical severe symptoms. However, the ALJ is in the best position to observe Miller and determine her credibility. In this case, the ALJ, despite the fact that Miller stated that a migraine was beginning, had the opportunity to observe her for the entirety of the hearing and concluded that she did not appear to be in any distress. There was nothing improper about the ALJ's observation of Miller. Moreover, this observation was only one of the reasons that the ALJ found

Miller not credible.  The ALJ also reasonably relied on a lack of objective medical evidence, as well as Miller's inconsistent statements about her migraines, and evidence that she had been involved in a crime that involved dishonesty:  "check deception," for which she spent time in jail.  (R. 368).  This was a reasonable credibility determination and was certainly not "patently wrong."

**Whether Plaintiff's depression should have been found to be severe.**

Miller also argues that the ALJ erred when she found that Miller's depression was not a severe impairment.  Miller alleges that the ALJ failed to fully develop the record concerning her depression.  Specifically, she argues that the ALJ did not question her about her depression and did not provide her counsel with the opportunity to question her regarding her depression.  However, in examining the hearing transcript, it appears that the ALJ stated:  "Well, I have reviewed the medical evidence, so Mr. Poke (sic), if you don't mind, I'll just go directly to the vocational expert."  (R. 38).  This does not amount to a situation where the ALJ refused to allow a specific line of questioning or refused to entertain Miller's allegations.  In fact, Miller's counsel at the hearing actually agreed to proceed with testimony from the VE rather than further examining Miller's complaints.  (R. 38).[1]

Miller also alleges that the ALJ ignored the fact that she was hospitalized with

---

[1]Counsel did not request the opportunity to ask further questions, keep the record open for additional evidence, or make further argument.  As the ALJ proposed to close the hearing, Miller's counsel stated:  "Thank you, Judge.  That's it."  (R. 41).

suicidal thoughts and given a Global Assessment of Functioning ("GAF") score of 45 on November 6, 2006. However, the ALJ did not commit reversible error by failing to address this medical record. This hospitalization was well before Miller's alleged onset date, and she was never treated by any mental health professional after this one hospitalization. Furthermore, the mental health assessment during this one incident is contradicted by other objective medical evidence in the record. Dr. Fink completed a mental status exam in March 2008 that was essentially normal, and he assigned a GAF score of 62. (R. 368-70). Additionally, two state-agency mental health professionals found that Miller had no severe mental impairment. (R. 381-94, 475). Based on the totality of the objective medical evidence during the relevant time period, the ALJ's decision finding that Miller's depression was not a severe impairment is supported by substantial evidence and must be affirmed.

## V. Conclusion

The ALJ's decision finding that Miller's migraines and depression are not severe impairments is supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is **AFFIRMED**. Judgment consistent with this entry shall now issue.

**SO ORDERED** the 1st day of August 2012.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Jesse R. Poag
YOCUM LAW OFFICE
jespoag@msn.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov